UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THOMAS D. MCCARTHY,

               Plaintiff,   **MEMORANDUM, DECISION AND ORDER AFTER <u>BENCH TRIAL</u>**
    - against -   99-CV-1645 (RRM)(JMA)

AMERICAN INTERNATIONAL GROUP, INC.,
et al.,

               Defendants.
------------------------------------------------------------X

**ROSLYNN R. MAUSKOPF, United States District Judge.**

     Plaintiff Thomas D. McCarthy ("McCarthy"), formerly an employee of USAir, seeks to recover disability benefits from defendant American International Group ("AIG"), USAir's insurer. Plaintiff alleges that in April 1995 he suffered a work-related accident that rendered him permanently and totally disabled. In May 1996, plaintiff submitted a benefits claim for "Accidental Permanent Total Disability" under AIG policy number PAI8043595 ("Policy"). AIG denied coverage, declining to find that plaintiff was permanently and totally disabled as defined by the Policy. Plaintiff sued for breach of contract. Following a non-jury trial on submission, this Court finds in favor of defendant AIG.

## PROCEDURAL BACKGROUND

     On June 30, 1998 plaintiff filed suit in New York Supreme Court, Queens County. On March 24, 1999, defendant removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Defendant then moved for summary judgment on the grounds that: (1) McCarthy's injury was not covered by the Policy; and (2) McCarthy's notice of claim was

untimely under the Policy. That motion was denied on both grounds.[1] In 2006, the parties filed omnibus cross-motions *in limine*. The district court (Friedman, J.) held, *inter alia*, that plaintiff's treating physician, Dr. Robert A. Duca, was the only witness permitted to testify as to whether plaintiff was permanently and totally disabled pursuant to Policy language.

In May 2008, Dr. Duca passed away before the commencement of trial. In response, the parties again filed omnibus cross-motions *in limine*. This Court held that: (1) Dr. Duca's records were the only evidence relevant to the determination of whether the April 1995 accident caused plaintiff's total and permanent disability; (2) a pre-existing condition that contributed to the disability did not necessarily preclude recovery; (3) despite the Court's necessary reliance upon Dr. Duca's records alone, questions of fact remained regarding causation necessitating a trial; and (4) plaintiff's request that the Court compel AIG to produce out-of-state, non-officer witnesses was denied. In a September 12, 2008 pre-trial teleconference, the parties agreed that the only issue in dispute was whether the April 1995 injury caused the plaintiff's total and permanent disability as defined by the Policy, and that Dr. Duca's medical records were the only evidence relevant to that determination. As such, plaintiff withdrew his request for a jury trial.

The parties consented to the non-jury trial of this action without the presentation of live testimony on a record consisting of written trial submissions, the stipulated facts contained in the joint pre-trial order, and certain additional evidentiary exhibits. This constitutes the Court's decision after trial.

---

[1] Our predecessor court (Johnson, J.) initially granted summary judgment for AIG, but the Second Circuit vacated the judgment and remanded the matter for further proceedings. *See McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121 (2d Cir. 2002).

# FINDINGS OF FACT[2]

Upon due consideration of the developed factual record, including examination of exhibits presented upon submission, this Court sets forth the following factual findings based on the credible evidence presented at trial:

1. USAir employed plaintiff as a utility man in its maintenance department at LaGuardia Airport from November 14, 1988 to April 17, 1995. Plaintiff was responsible for supervising cleaning activity for all arriving and departing flights.

2. On August 29, 1991, while working at LaGuardia, plaintiff tripped on a curb and tore the cartilage in his left knee.

3. While awaiting surgical approval, plaintiff developed a "stilted gait," which caused severe lower back pain.

4. In April 1992, plaintiff underwent arthroscopic surgery on his left knee, during which Dr. Paul Yerys repaired a torn medial meniscus.

5. Upon returning to work, plaintiff continued to suffer from severe lower back pain. On August 31, 1992, Dr. John Nicoletti examined plaintiff and noted that "[t]here is no doubt that he has a chronic low back syndrome . . . ." X-rays taken on November 9, 1992 showed "degenerative changes of the lumbar vertebral bodies." An MRI performed on December 9, 1992 revealed "degenerative change at multiple levels associated with mildly bulging discs . . . ."

6. Between May 1992 and April 1995, plaintiff missed approximately sixty-five days of work due to lower back pain.

---

[2] Based upon a preponderance of the credible evidence and arguments presented upon the submitted evidentiary record, the Court sets forth findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any of the findings of fact may be deemed conclusions of law, they also shall be considered conclusions. Likewise, to the extent that any of the conclusions of law may be deemed findings of fact, they shall be considered findings. *See Miller v. Fenton*, 474 U.S. 104, 113-14 (1985) (noting the difficulty, at times, of distinguishing findings of fact from conclusions of law).

7. In December 1992, plaintiff subscribed to an Accidental Death & Dismemberment Policy issued by defendant, which became effective on August 1, 1993. The Policy provided total disability benefits and defined eligibility for such benefits as follows:

> When, within one year after the date of the accident, the insured's injury results in continuous total disability lasting at least 12 consecutive months and at the end of that period the insured is judged by his or her doctor to have a permanent and total disability, we will pay the insured a lump sum permanent total disability benefit.

The Policy defined "Continuous Total Disability" as:

> . . . the complete inability of the insured, while under the regular care and attendance of a doctor, to perform any duty of his or her usual occupation."

The Policy defined "Permanent Total Disability" as:

> . . . the insured being continuously totally disabled and also, after being under a doctor's regular care and attendance, being judged by that doctor as being unable, solely as a result of such accident, from engaging in any occupation for wage or profit for which he or she is suited by reason of education, training or experience and remaining so unable for the rest of his or her life.

The Policy defined "Injury" as:

> . . . bodily injury caused by an accident occurring while this Policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this Policy.

9. On March 8, 1995, plaintiff saw Dr. Robert Duca and complained of "pain and numbness" in his hip and leg. A review of plaintiff's X-rays and an MRI led Dr. Duca to conclude that plaintiff continued to suffer from degenerative disc disease, lumbar spinal syndrome, osteoarthritis, and scoliosis. Plaintiff saw Dr. Duca again on March 22, 1995 and April 5, 1995. In subsequent reports, Dr. Duca indicated that plaintiff was totally disabled.

10. Beginning on March 8, 1995, Dr. Duca filed several "Attending Doctor Reports" with the New York State Workers' Compensation Board. Prior to April 19, 1995, Dr. Duca described the origin of the injury as follows:

> Patient states that on 08/29/91, he tripped and fell off curb while ascending curb twisting and injuring left knee. As a result of injury, patient has developed lower back pain, which had undergone an MRI for revealing degenerative Disc Disease [sic].

Dr. Duca indicated that plaintiff's total disability prevented him from working. He listed August 29, 1991 as the first date of the disability and noted that there were no known pre-existing conditions.

11. On April 17, 1995, while pulling a water hose toward an airplane for the third time that day, plaintiff's back gave out and he was unable to continue working.

12. On April 19, 1995, plaintiff returned to Dr. Duca, who noted in his records that plaintiff had returned to work and experienced pain in his lower back. Dr. Duca characterized plaintiff as "re-injured" and recommended that he abstain from working for two weeks. Dr. Duca also filed the first of six USAir Medical Reports explaining plaintiff's absence from work. In each of those reports Dr. Duca listed the date of injury as April 17, 1995, and the date of the original injury as August 29, 1991. Additionally, in each of the reports Dr. Duca characterizes the injury as a "recurrence" or "new episode."

13. On April 19, 1995, Dr. Duca wrote a letter to plaintiff's health insurance provider, Alexis Risk Management, detailing the nature of plaintiff's injuries. In that letter, Dr. Duca stated "[r]eview of MRI films taken previously revealed Degenerative Disc Disease [sic]." Dr. Duca further noted that "[p]atient was advised to continue taking medications previously prescribed to help alleviate some pain [and] swelling."

14. Beginning on May 1, 1995, Dr. Duca, in his "Attending Doctor Reports" to the New York State Workers' Compensation Board, described the origin of plaintiff's injuries:

> While working ramp and pulling a waterhose [sic] from water closet to rear of aircraft approximately 200 feet, and performing this duty twice, patient experienced an acute recurring pain lumbosacral region [sic]. As a result of the accident patient stopped work and went home.

The "Treatment Rendered" section was identical to the earlier reports with the exception that Dr. Duca now requested an MRI and epidural injections. In the reports filed between May 1, 1995 and December 17, 2007, Dr. Duca listed the first day of disability as April 17, 1995. In the August 23, 1995 report, Dr. Duca explained that "[t]his injury aggravated [plaintiff's] injury of 08/29/91 in which patient has suffered severe lower back pain which patient sustained as a result of a slip and fall injury while working."

15. On September 18, 1995, Dr. Duca and plaintiff filed a "Notice of Claim For Disability Benefits" with AIG in which Dr. Duca diagnosed plaintiff with several injuries sustained as a result of employment: degenerative disc disease, osteoarthritis, and scoliosis. Plaintiff described the origin of his injuries as "[o]n job knee injury 8-29-91 resulting in consequential lumbar injury," resulting in disability manifesting on April 17, 1995.

16. On September 18, 1995, Dr. Duca filed an "Attending Physician's Initial Statement of Disability" with Fortis Benefits. Dr. Duca dated the first of plaintiff's symptoms to April 17, 1995, and noted April 19, 1995 as plaintiff's first visit for those symptoms.

15. On May 3, 1996, plaintiff filed a claim for "Accidental Permanent Total Disability" with AIG under Policy number PAI8043595. In the Patient Information section signed by plaintiff, he described the accident: "8/29/91 – torn cartilege [sic] – left knee – 8 mo. delay for surgical approval – stilted gait caused lumbar vertebrae bulging and disability." In his Attending Physician Statement, Dr. Duca indicated that the accident occurred on August 29,

6

1991, resulting in immediate manifestation of symptoms; as a result of these symptoms, he ordered patient to cease working on April 17, 1995. Dr. Duca's diagnosis characterized plaintiff as totally disabled, and included among his ailments chronic lumbosacral syndrome, degenerative disc disease, osteoarthritis, moderate stenosis, and bulging vertebrae.

16. On August 15, 1996, defendant denied plaintiff's claim on the grounds that (1) plaintiff's August 29, 1991 injury occurred prior to the effective date of the Policy; and (2) the resulting disability did not commence within twelve months of the accident, as required by the Policy.

17. On September 7, 1996, plaintiff appealed this decision in a letter explaining that the knee injury sustained August 29, 1991 was "unrelated" to the accident of April 17, 1995. In response, defendant requested additional documentation regarding the April 17, 1995 injury.

18. On January 29, 1997, relying primarily upon an Independent Medical Examination (IME) conducted by Dr. Kenneth Seslowe on December 23, 1996, defendant denied plaintiff's appeal on the following grounds: (1) on April 17, 1995 plaintiff sustained a "lumbosacral sprain superimposed upon degenerative disc disease which pre-existed the April 17, 1995 injury"; and (2) plaintiff is "permanently partially" disabled and is capable of certain "sedentary" work.

19. On February 18, 1997, plaintiff again appealed defendant's decision in a letter emphasizing the IME's inadequacy and erroneous conclusions. Plaintiff further alleged that his disability was total and permanent.

20. On June 2, 1997, defendant, relying upon two other IME reports and a Vocational Evaluation Report dated January 15, 1997, rejected plaintiff's claim on the basis that: (1) plaintiff's pre-existing back condition contributed or caused more than fifty percent of his

disability; (2) the April 17, 1995 injury did not constitute the sole cause of plaintiff's disability; and (3) plaintiff did not suffer a permanent and total disability as defined by the Policy.

## CONCLUSIONS OF LAW

Under New York law, the burden of proving total disability in an insurance dispute rests upon the insured. *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 124 (2d Cir. 2000) (citing *Goell v. United States Life Ins. Co.*, 55 N.Y.S.2d 732, 732-33 (App. Div. 1945)). Whether an accident caused the disability "directly and independently of all other causes is a question of fact." *Ajnoha v. JC Penney Life Ins. Co.*, 480 F. Supp. 2d 663, 676 (E.D.N.Y. 2007) (quoting *Le Glaire v. New York Life Ins. Co.*, 186 N.Y.S.2d 291, 294 (App. Div. 1959)) (internal quotation marks omitted).

In order to recover under the terms of the Policy at issue, plaintiff must establish: (1) that the accident that caused his disability occurred while the Policy was in effect; (2) continuous, total disability for twelve consecutive months following the accident; and (3) permanent and total disability "solely as a result" of the April 17, 1995 accident, and that the injury was the direct and independent cause of the disability. Plaintiff has failed to establish the third requirement.

Plaintiff's contention that Dr. Duca's medical records establish that the accident of April 17, 1995 was the substantial cause of plaintiff's permanent and total disability fails. Since plaintiff's back condition pre-dates the effective date of the Policy, he is not entitled to total disability benefits. Instead, defendant's argument prevails: plaintiff's pre-existing back condition, the result of a 1991 knee injury, substantially caused the disability.

The New York Court of Appeals has long held that contract language requiring an accident to be the direct and independent cause of the injury at issue does not preclude recovery

8

in all cases in which an infirmity pre-dates the Policy in question. *Silverstein v. Metro. Life Ins. Co.*, 254 N.Y. 81, 83 (1930). Rather, the *Silverstein* court drew a distinction between a condition that itself amounts to a "disease or an infirmity," on the one hand, and a condition that is "at most a predisposing tendency" to injury, on the other. *Id.* Only the latter precludes recovery under an insurance contract. *Id.*; *compare, e.g., Sugarman v. New England Mut. Life Ins. Co.*, 201 F. Supp. 759 (E.D.N.Y 1962) (recovery denied when death was as likely result of dormant aneurysm as fall); *McMartin v. Fid. & Cas. Co.*, 264 N.Y. 220 (1934) (recovery denied for death resulting from the combined effects of automobile accident and pre-existing progressive kidney disease); *with Bernstein v. Am. Home Assurance Co.*, 395 N.Y.S.2d 532 (App. Div. 1977) (recovery not barred where the insured had a harmless, pre-existing "bleb" on his left eye that made him more susceptible to an infection caused by the unforeseeable depositing of animal matter on that eye); *Amend v. Equitable Life Assurance Co.*, 73 Misc.2d 402, 342 N.Y.S.2d 284 (Civ. Ct. 1972) (recovery not barred where static, asymptomatic aneurysm and injury from accident both contributed to insured's death). "[I]f the bodily condition is not of itself capable of doing significant mischief . . . it does not preclude recovery . . . ." *Sugarman*, 201 F. Supp. at 762; *see also Ajnoha v. JC Penney Life Ins. Co.*, 480 F. Supp. 2d at 675.

Plaintiff relies on Dr. Duca's communications with Alexis Risk Management and the Workers' Compensation Board, in which he dates plaintiff's disability-causing accident to April 17, 1995. However, plaintiff fails to prove conclusively that his pre-existing back condition was a substantial contributing cause of the accident and subsequent disability. He proves only that he suffered an accident on April 17, 1995, which caused a disability; he does not prove that the April 17, 1995 accident was the sole cause of that disability. Plaintiff further relies on Dr. Duca's documentation of an apparently severe escalation of symptoms after the April 17, 1995

injury. Yet, this escalation, no matter how severe, fails to prove that the April 17, 1995 accident was the sole cause – or even a substantial cause – of plaintiff's disability.

Plaintiff has failed to address whether the pre-existing condition was a concurrent cause of his disability, and, if so, whether the condition constituted an independently harmful disease that pre-disposed the insured to disability. To recover under the Policy, plaintiff must show his degenerative disc disease, which was diagnosed prior to the effective date of the Policy, was not a concurrent cause of the disability; alternatively, plaintiff must show that this disease was merely a pre-disposing tendency.

In fact, the evidence indicates that Dr. Duca considered the April 17, 1995 injury to be simply another episode in a history of back injuries suffered by plaintiff as a result of the initial 1991 knee injury. In the first claim form filed with AIG, Dr. Duca listed August 29, 1991 as the date symptoms first appeared. On April 19, 1995, Dr. Duca noted that plaintiff "re-injured" his back. In the USAir Medical Reports, Dr. Duca characterized the injury as a "recurrence" and "new episode." In his letter to Alexis Risk Management, Dr. Duca notes that the April 19, 1995 examination revealed the same diagnosis (*i.e.*, degenerative disc disease) as MRI films taken prior to April 17, 1995. Finally, in his Attending Doctor's Report to the Workers' Compensation Board, Dr. Duca noted that plaintiff's April 17, 1995 injury "aggravated his injury of 8/29/1991" and concluded from a comparison with previous medical records that plaintiff's "degenerative changes of the lumbar vertebral bodies have progressed . . . ." Plaintiff has presented no evidence to establish that Dr. Duca considered the April 17, 1995 injury to be an independent cause of his disability.

Furthermore, the nature of the April 17, 1995 accident itself suggests a causal link between the 1991 knee injury and plaintiff's disability so as to preclude liability. In *Silverstein*,

the court held that "[t]here will be no recovery . . . where an everyday act, involving ordinary exertion, brings death to an insured . . . ." *Silverstein*, 254 N.Y. at 84. Indeed, in each of the above-mentioned cases where recovery was allowed, the accident was independent of the pre-existing condition and not foreseeable by the insured. In the instant case, by contrast, plaintiff has not established that the disability-causing accident was independent of his degenerative disc disease. On April 17, 1995, plaintiff's back was injured due to a certain job-related activity; namely, pulling a water hose to a plane. It is undisputed that such activity was typical of plaintiff's duties as an aircraft utility man and, thus, plainly foreseeable. Through this exertion plaintiff suffered the same injury, albeit more severe, from which he had been suffering for the past three years.

Additionally, the evidence makes clear that the back condition was capable of harming plaintiff – and, indeed, did harm him – independent of the accident on April 17, 1995; it is, therefore, a pre-existing disease under the *Silverstein* analysis. As early as August 31, 1992, plaintiff was diagnosed with degenerative disc disease. Between April 1992 and April 1995, plaintiff missed more than two months of work due to this condition. In March 1995, one month *prior* to the April 17, 1995 accident, Dr. Duca designated plaintiff as totally disabled as a result of his degenerative disc disease. Furthermore, at least one jurisdiction has held, under similar facts and legal standards, that degenerative disc disease is a disease that will preclude liability if, as a pre-existing condition, it contributed to an insured's disability. *See Button v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 584 (9th Cir. 1988). Plaintiff's infirmity was not simply a harmless condition that made plaintiff more susceptible to injury given the occurrence of an unlikely accident. Rather, it was a disease that regularly caused him physical pain for three years –

independent of any other cause – and that eventually disabled him while he performed ordinary and foreseeable work duties.

Plaintiff has failed to establish that his pre-existing back condition was not a substantial cause of his disability or that it was a harmless condition that simply pre-disposed him to suffer a disabling injury. Rather, the evidence supports a finding that, under *Silverstein*, plaintiff's back condition was a pre-existing disease known to the plaintiff at the time he entered into the contract with defendant. Consequently, recovery is barred under New York law.

## CONCLUSION

For the reasons above, plaintiff's claims are found to be without merit. The Clerk of Court is hereby directed to enter judgment in favor of defendant AIG on the issue of liability and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
       September 24, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge